# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| WSOU Investments LLC doing business as Brazos Licensing and Development, § § § § Plaintiff, § § v. § § OnePlus Technology (Shenzhen) Co., Ltd., § § Defendant. § § § | Civil Action No. 6:20-cv-00952-ADA<br>Civil Action No. 6:20-cv-00953-ADA<br>Civil Action No. 6:20-cv-00956-ADA<br><br>Jury Trial Demanded |

## DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSIVE CLAIM CONSTRUCTION BRIEF (GROUP 1 PATENTS)

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. U.S. PATENT NO. 7,477,876 ("THE '876 PATENT")................................................... 1

    A. Disputed Terms of the '876 Patent ...................................................................... 1

        1. "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" ('876 Patent, Claim 1)................................................................................ 1

III. U.S. PATENT NO. 8,149,776 ("THE '776 PATENT")................................................... 3

    A. Disputed Terms of the '776 Patent ...................................................................... 3

        1. "transmitter configured to attempt access to a wireless network…"/ "[transmitter] attempting access to a wireless network ('776 Patent, Claims 1 and 10) ................................................................................... 3

        2. "processor" ('776 Patent, Claims 10, 11, 12, 14, 15, 16, 18, 19) .............. 6

        3. "program of instructions" ('776 Patent, Claims 19) ................................. 7

IV. U.S. PATENT NO. 8,767,614 ("THE '614 PATENT")................................................... 8

    A. Disputed Terms of the '614 Patent ...................................................................... 8

        1. "means for causing sending of a buffer information report to a system station" ('614 Patent, Claim 6) / "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus … sending of a buffer information report to a system station" ('614 Patent, Claim 13) ............................................................................................................ 8

        2. "means for causing sending of an indication to the system station" ('614 Patent, Claim 6) / "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus . . . sending of an indication to the system station" ('614 Patent, Claim 13) .................................................. 12

        3. "the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension" ('614 Patent, Claim 14)............................................................................ 13

V. CONCLUSION................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dyfan, LLC v. Target Corp.*,
   6:19-cv-179-ADA, Dkt. 57 (W.D. Tex. 2020) ..........................................................................7

*Function Media, LLC v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013)..................................................................................................7

*HTC Corp. v. IPCom GmbH & Co., KG*,
   667 F.3d 1270 (Fed. Cir. 2012)................................................................................................10

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*
   2017 WL 2691227 (E.D. Tex. June 22, 2017)..........................................................................4

*Noah Systems Inc. v. Intuit Inc.*,
   675 F.3d 1302 (Fed. Cir. 2012)................................................................................................10

*WSOU Investments LLC d/b/a Brazos Licensing and Development v. Google LLC*,
   6:20-cv-00571-ADA, Dkt. 46 (W.D. Tex. June 2, 2021).................................................6, 9, 12

**Statutes**

35 U.S.C. 112, ¶ 6 ........................................................................................................... *passim*

35 U.S.C. § 112, ¶ 6 ........................................................................................................ *passim*

**Other Authorities**

U.S. PATENT NO. 7,477,876 ......................................................................................................1, 2

U.S. PATENT NO. 8,149,776 ................................................................................................ *passim*

U.S. PATENT NO. 8,767,614 ................................................................................................ *passim*

I.   INTRODUCTION

The Group 1 Patents are generally directed to wireless communication systems and include the '876 Patent, '776 Patent, and the '614 Patent. For the '876 Patent, the parties dispute the meaning of the phrase "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station."

There are three disputed phrases for each of the '776 and '614 Patents, all of which invoke 35 U.S.C. § 112, ¶ 6 and are indefinite. For the '776 Patent, WSOU proposes that the three indefinite phrases should be construed with their "plain and ordinary meaning," which fails to resolve the parties dispute and only underscores the indefiniteness of the disputed phrases. For two of the disputed phrases for the '614 Patent, WSOU proposes that the recited structure is "processor and memory," which are the types of general purpose computing components consistently found to not disclose sufficient structure. WSOU does not identify an algorithm sufficient to overcome indefiniteness. For the final disputed phrase of the '614 Patent, WSOU does not contest that, if the phrase is found to invoke § 112, ¶ 6, the claim is invalid for indefiniteness for lack of disclosed corresponding structure.

II.   U.S. PATENT NO. 7,477,876 ("THE '876 PATENT")

   A.   Disputed Terms of the '876 Patent

      1.   "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" ('876 Patent, Claim 1)

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| varying a rate for reporting channel quality information from a mobile station to a base station using only the mobile station's detection of the presence or absence of an actual data transmission | Plain and ordinary meaning; which is: "varying a rate for reporting information about the status of the communication channel from a mobile station to a base station as a function of the |

1

| from the base station as the trigger for varying the rate, and not varying the rate based on the content of the data transmission or any other message or signal instructing such action | presence or absence of a reception of a data transmission at the mobile station" |
|---|---|

WSOU concedes that it obtained allowance of the Asserted Claims of the '876 Patent by asserting that Chen lacked the claimed feature of "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station." *See* Pl.'s Resp. Br. at 2-3. WSOU further concedes that "Applicants asserted that Chen disclosed varying the rate using only an instruction (*i.e.*, the content of a data transmission)" and that Applicant's remarks "differentiated the claimed invention from the usage of a 'separate signaling message from the base station.'" *Id.* These admissions confirm the need for the Court to adopt OnePlus's construction clarifying that the claims do not encompass varying the rate based on the "the reception of an actual data transmission" that provides an instruction to change the rate in the content of the data transmission.

WSOU contends that the arguments relied upon to secure allowance over Chen should not impact the construction because "Applicants never stated that the claims permitted the reporting rate to be varied using 'only' the mobile stations detection of the presence or absence of a data transmission." *See* Pl.'s Resp. Br. at 3. To the contrary, an argument made to distinguish prior art will narrow the scope of a claim regardless whether an Applicant explicitly asserts that the claims are limited to "only" the distinguishing feature. In *Seachange Intern., Inc. v. C-COR, Inc.*, the applicant overcame prior art during prosecution by arguing that the claims were directed to a network using a "point-to-point two-way channel interconnection" and that this feature was missing in the prior art. 413 F.3d 1361, 1372 (Fed. Cir. 2005). The Federal Circuit found that the applicant's argument narrowed the scope of the claimed phrase "'network for data

2

communications'… to cover only a point-to-point network." *Id*. at 1375. The Federal Circuit held the scope of this phrase was narrowed even though the applicant had not argued that the claims permitted *only* using point-to-point interconnections.

WSOU should not be allowed to broaden the claims for assertion against OnePlus by recapturing subject matter surrendered to secure their allowance. OnePlus's construction should be adopted.

### III.    U.S. PATENT NO. 8,149,776 ("THE '776 PATENT")

#### A.    Disputed Terms of the '776 Patent

##### 1.    "transmitter configured to attempt access to a wireless network…"/ "[transmitter] attempting access to a wireless network ('776 Patent, Claims 1 and 10)

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>**Function**: attempting access to a wireless network by sending on a random access channel at a first transmit power a first preamble comprising a signature sequence and by randomly selecting the signature sequence from a set of signature sequences<br><br>**Structure**: none disclosed<br><br>The claim is indefinite. | Plain and ordinary meaning. This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. |

WSOU does not dispute that the claimed "transmitter" fails to recite sufficient structure to perform the claimed function of "randomly selecting the signature sequence from a set of signature sequences." To overcome this deficiency, WSOU argues that "nowhere do the claims indicate the transmitter itself must perform the random selection process." Pl.'s Resp. Br. at 7. WSOU does not even attempt to reconcile this assertion with the claim language requiring "a transmitter configured to attempt access … by sending … a signature sequence that is randomly selected from

3

a set of signature sequences." See '776 Pat. at claim 10. The claims require "a transmitter configured" to perform the function of attempting access by sending a "randomly selected" sequence and, thus, must disclose sufficient structure to do so.

WSOU asserts that *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.* supports its position that "transmitter configured to" does not trigger § 112, ¶ 6. Pl.'s Resp. Br. at 6. But in *Huawei*, the claim at issue only required the transmitter to be configured "to send" data, while other components—including a receiver and processor—were recited as performing other functions. *See* 2017 WL 2691227, at *25-27 (E.D. Tex. June 22, 2017). The *Huawei* court found the claim did not invoke § 112, ¶ 6 because it recited the inputs and outputs of the claimed "mobility management entity," with the transmitter acting as the output that *sends* the data, the receiver acting as the input that *receives* the data, and the processor *deducing* the data. *Id.* at 26. Here, in stark contrast, the claimed "transmitter" is "configured" to do far more than just sending data—the claims require "a transmitter configured" to attempt access by sending a "randomly selected" sequence. Further, unlike the limitation at issue in *Huawei*, the claims here do not recite any additional components to perform these functions.

To supply the missing structure, WSOU argues there are unclaimed "components in addition to a transmitter–for example, processors and memory" that perform the claimed function of randomly selecting the signature sequence. Pl.'s Resp. Br. at 7. But claims 1 and 10 do not recite this processor and memory. Because the claimed "transmitter" alone is admittedly insufficient structure for performing the claimed function, these limitations are governed by § 112, ¶ 6.[1]

---

[1] WSOU's expert declaration adds nothing of value to the analysis. The expert says only that those in the art "understand a 'transmitter' to refer to a combination of hardware and software that is capable of transmitting a signal." Paragraph 39. Even if there were support for this

4

WSOU next argues that the "transmitter" –when combined with an unclaimed processor— would disclose sufficient structure because the specification purportedly discloses an algorithm for the claimed function. In support, WSOU points to Figures 3 and 5 and corresponding portions of the specification. Pl.'s Resp. Br. at 8. But Figure 3 and the accompanying text provides nothing more than a recitation of general-purpose computing components. Nothing in Figure 3 or the cited description at 6:62-7:4 discloses an algorithm that a "transmitter," or processor as WSOU argues, could execute for "randomly selecting the signature sequence from a set of signature sequences."

Figure 5's flow chart also does not provide the missing algorithm. WSOU's expert asserts that Figure 5 "illustrates the execution of computer program instructions." Pl.'s Ex. G (Cooklev Decl.) at ¶ 42. But these "instructions" are nothing more than what is already recited in the claims. Step 502 in Figure 5 refers to "attempt[ing] access to a wireless network by sending on the RACH at a first power a first preamble comprising a signature sequence," but provides no algorithm describing how this is to be done. *See* '776 Pat. at claim 1 ("attempting access to a wireless network by sending from a transmitter on a random access channel at a first transmit power a first preamble comprising a signature sequence"); claim 10 (same). Step 508 of Figure 5 says that the first and second "signature sequence are each randomly generated," but does not provide any hint about how to do so.

WSOU's purported support in the '776 Patent does not disclose an algorithm—or any other sufficient structure—for performing the claimed function of "attempting access to a wireless network by sending on a random access channel at a first transmit power a first preamble comprising a signature sequence that is randomly selected from a set of signature sequences" as

---

characterization, it would do nothing to show that a transmitter is sufficient structure to perform the random selection required by the claims.

required by claims 1 and 10.  Claims 1 and 10 are invalid for indefiniteness.

        **2.**        **"processor" ('776 Patent, Claims 10, 11, 12, 14, 15, 16, 18, 19)**

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>**Function**: determining that access attempts are unsuccessful<br><br>**Structure**: none disclosed<br><br>The claim is indefinite. | Plain and ordinary meaning.  This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. |

      WSOU's opposition simply ignores the decision from this Court that found almost every claim limitation including the word "processor" to invoke § 112, ¶ 6.  *See WSOU Investments LLC d/b/a Brazos Licensing and Development v. Google LLC*, 6:20-cv-00571-ADA, Dkt. 46 at 1-2 (W.D. Tex. June 2, 2021).  WSOU makes no effort even to try to distinguish the "processor" claims here from those in its other lawsuit before this Court.

      WSOU asserts that because "processor" is a commonly understood component of a computer it does not invoke § 112, ¶ 6.  Pl.'s Resp. Br. at 9.  However, the fact that a component is "commonly understood" does not mean it connotes sufficient structure to avoid means-plus-function treatment.  As this court has previously found, "processor" is exactly the type of nonce word that invoke § 112, ¶ 6.  *WSOU v. Google*, 6:20-cv-00571-ADA, Dkt. 46 at 1, 3-5.

      The "processor" limitations in the asserted claims are indefinite because the specification does not disclose sufficient corresponding structure.  WSOU argues that claim 10 itself provides sufficient structure because the claims explain that the apparatus contains a processor and describes how the processor interacts with other components of the device.  WSOU then recites claim 10 and states that a POSITA would understand.  These conclusory statements provide no explanation how the processor interacts with any other component.  Claim 10, for example, requires "a

processor configured to determine that the access attempt from the first preamble was unsuccessful" and WSOU has not identified any disclosure that could even theoretically qualify as an algorithm for performing this function.

Because WSOU has not, and cannot, identify sufficient structure for the "processor" limitations, claims 10, 11, 12, 14, 15, 16, 18, and 19 are invalid for indefiniteness.

### 3. "program of instructions" ('776 Patent, Claims 19)

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| Preamble limiting; This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>**Function**: attempting access to a wireless network by sending a signature sequence on a random access channel<br><br>**Structure**: none disclosed<br><br>The claim is indefinite. | Plain and ordinary meaning. This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. |

WSOU admits that "'[p]rogram of instructions' refers to software containing a set of instructions." *See* Pl.'s Resp. Br. at 13. WSOU only argues that "'program of instructions' is a commonly used and well-understood term in the art." *See* Pl.'s Resp. Br. at 13 (citing Cooklev Decl. at ¶ 59). However, as discussed above, the fact that a term is "commonly used" does not mean it has sufficient structure. *Dyfan, LLC v. Target Corp.*, 6:19-cv-179-ADA, Dkt. 57 at 19-20 (W.D. Tex. 2020) (finding "code" subject to §112, ¶ 6 because it "is defined only by the function that it performs"). Further, when a claim recites computer or software as the structure, as WSOU argues is the case here, the specification must provide some detail about the means to accomplish the function. *Id.* at 21 (citing *Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1318 (Fed. Cir. 2013) ("When dealing with a 'special purpose computer-implemented means-plus-function limitation,' we require the specification to disclose the algorithm for performing the function.").

WSOU argues that "program of instructions" discloses sufficient structure because the specification discloses an algorithm. In support, WSOU again points to Figures 3 and 5 and the corresponding portions of the specification. Pl.'s Resp. Br. at 15. As discussed above, Figure 3 and the accompanying text disclose nothing more than general-purpose computing components. Nothing in Figure 3 or the cited description at 6:62-7:4 discloses an algorithm for implementing the recited functions performed by the claimed "program of instructions."

Additionally, Figure 5's flow chart does not provide an algorithm for implementing the recited functions performed by the claimed "program of instructions." WSOU's expert make the conclusory assertion that Figure 5 "defines a structure, in the form of an algorithm, for the operation of the claimed 'program for instructions.'" Pl.'s Ex. G (Cooklev Decl.) at ¶ 61. But as discussed above, these "instructions" are nothing more than what is already recited in the claims. Neither Figure 5 nor the corresponding specification provides any explanation of how the "program of instructions" performs the claimed function of "attempting access to a wireless network by sending a signature sequence on a random access channel."

WSOU's purported support in the '776 Patent does not disclose an algorithm—or any other sufficient structure—for performing the claimed function of "attempting access to a wireless network by sending a signature sequence on a random access channel" as required by claim 19. Claim 19 is invalid for indefiniteness.

IV. **U.S. PATENT NO. 8,767,614 ("THE '614 PATENT")**

    A. **Disputed Terms of the '614 Patent**

        1. **"means for causing sending of a buffer information report to a system station" ('614 Patent, Claim 6) / "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus … sending of a buffer information report to a system station" ('614 Patent, Claim 13)**

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: causing sending of a buffer information report to a system station.<br>**Structure**: none disclosed.<br><br>The claim is indefinite. | These terms are not indefinite. No construction necessary – plain and ordinary meaning<br><br>Claim 13 should not be construed under 35 U.S.C. § 112, ¶ 6. To the extent the Court treats the term as means-plus-function:<br><br>**Function**: "for causing sending of a buffer information report"<br>**Structure**: processor and memory<br><br>Refer 6:4-9 |

WSOU does not dispute that this limitation of claim 6 is a means-plus-function term that should be interpreted subject to 35 U.S.C. § 112, ¶ 6. *See* Pl.'s Resp. Br. at 17. There is also no dispute that the claimed function is "causing sending of a buffer information report to a system station."[2] WSOU incorrectly asserts that claim 13's recitation of "'computer program code,' 'processor,' and 'memory' are all well understood structural components of electronic devices and do not invoke § 112, ¶ 6." Pl.'s Resp. Br. at 17. But these "well understood" components do not connote sufficient structure to avoid means-plus-function treatment and are exactly the type of nonce words that invoke § 112, ¶ 6. Indeed, this Court recently found that a similar phrase— lacking the term "means," and reciting the exact same "computer program code," "processor," and "memory" terms—was subject to 35 U.S.C. § 112, ¶ 6. *See WSOU v. Google*, 6:20-cv-00571-ADA, Dkt. 46 at 1-2 (finding that the phrase "at least one ***memory*** and the ***computer program code*** are configured, with the at least one ***processor***, to cause the apparatus to … " invoked 35 U.S.C. § 112, ¶ 6, and further finding this phrase indefinite for insufficient structure) (emphasis

---

[2] WSOU's proposed construction improperly truncates the recited function in claims 6 and 13 by omitting "to a system station." WSOU's Response, however, correctly identifies the "recited corresponding function of causing sending of a buffer information report ***to a system station***." Pl.'s Resp. Br. at 20 (emphasis added); *see id.* (identifying the "recited function of sending a buffer information report ***to a system station***") (emphasis added).

9

added).  Both claim 6 and 13 invoke § 112, ¶ 6.

Contrary to WSOU's arguments, WSOU's proposed structure of "processor and memory" is indefinite and does not connote sufficient structure to perform the claimed function of "causing sending of a buffer information report to a system station."  WSOU incorrectly asserts that Figure 3 and its accompanying description provides a sufficient level of specificity.  But Figure 3 and the related text is nothing more than a depiction of general purpose components located within a "controller apparatus 30."  *See* '614 Pat. at 6:4-9.  References to a "processor and memory" do not change the fact that those terms "amount to nothing more than a general-purpose computer." *See HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1280 (Fed. Cir. 2012).

WSOU also summarily concludes that "[a] POSA would understand that the controller apparatus's processor and memory interact to output a buffer information report."  Pl.'s Resp. Br. at 19.  But the relevant inquiry is not simply whether two generic components interact.  Rather, it concerns ***how*** those components interact and whether that interaction is sufficiently disclosed in the '614 Patent's specification to inform a skilled artisan as to how the components perform the recited function.  *See, e.g.*, *Noah Systems Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012).  Here, the '614 Patent does not provide any meaningful disclosure about how the system causes the sending of the buffer information as required by the claims.

WSOU also argues that the '614 Patent discloses an algorithm for achieving the recited function.  In support, WSOU points to Figures 3 and 4 and corresponding portions of the specification.  Pl.'s Resp. Br. at 20.  But, as explained above, Figure 3 and the accompanying text provide nothing more than a recitation of general purpose computing components.  Nothing in Figure 3 or the cited description at 6:4-9 discloses an algorithm that a "processor and memory" could execute for "causing sending of a buffer information report to a system station."

Additionally, Figure 4's flow chart does not provide sufficient structure.  WSOU's expert asserts that Figure 4 "would show a person of ordinary skill in the art the operations involved in [1] generating a buffer information report based on a buffer report format used by at least one user station, [2] the content of the report, and [3] sending the buffer information report to a serving base station from a relay node." Pl.'s Ex. G (Cooklev Decl.) at ¶ 72.  But these "operations" are nothing more than what is already recited in the claims.  Step 102 in Figure 4 (operation number 1) relates to the generation of a report based on a report format used by a user station, which is already recited in claims 6 and 13.  *See* '614 Pat. at claim 6 ("the report being generated based on a report format used for uplink reporting by a user station"); claim 13 (same).  Step 104 of Figure 4 (operation number 2) refers to the "indication" recited in claims 6 and 13, which is not relevant to this term and is discussed for the next disputed claim term.  And step 106 of Figure 4 (operation number 3) simply recites the "send[ing]" function that is claimed in claims 6 and 13 and at issue here.  *Compare* '614 Pat. at Fig. 4 (step 106 reciting "send the buffer information report to a serving station)*, with id.* at claim 6 ("sending of a buffer information report to a system station") and claim 13 (same).  Putting essentially verbatim claim language in boxes is not a disclosure of an algorithm for performing the recited function.

WSOU's purported support in the '614 Patent does not disclose an algorithm—or any other sufficient structure—for performing the claimed function of "[causing] sending of a buffer information report to a system station" as required by claims 6 and 13.  Claims 6 and 13 are invalid for indefiniteness.

11

2. **"means for causing sending of an indication to the system station" ('614 Patent, Claim 6) / "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus . . . sending of an indication to the system station" ('614 Patent, Claim 13)**

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: causing sending of an indication to the system station.<br>**Structure**: none disclosed.<br><br>The claim is indefinite. | These terms are not indefinite. No construction necessary – plain and ordinary meaning<br><br>Claim 13 should not be construed under 35 U.S.C. § 112, ¶ 6. To the extent the Court treats the term as means-plus-function:<br><br>**Function**: "for causing sending of an indication to the system station"<br>**Structure**: processor and memory<br><br>Refer 6:4-9 |

As with the prior limitation, WSOU does not dispute that this limitation in claim 6 should be interpreted subject to 35 U.S.C. § 112, ¶ 6. Pl.'s Resp. Br. at 21. The corresponding phrase in claim 13 recites the same "computer program code," "processor," and "memory" terms as discussed in the previous section and that this court has found to invoke 35 U.S.C. § 112, ¶ 6. *See WSOU v. Google LLC*, 6:20-cv-00571-ADA, Dkt. 46 at 1-2. For the same reasons discussed above, this phrase in claim 13 also invokes § 112, ¶ 6.

WSOU contends that the structure for this means-plus-function term is the same as that for the previous term—"processor and memory"—and argues that this structure is not indefinite for the same reasons WSOU provided for the previous term. Pl.'s Resp. Br. at 21. As explained in the previous section, WSOU's identification of two components of a general purpose computer does not provide sufficiently definite structure to overcome indefiniteness. The only relevant disclosure WSOU references is step 106 of Figure 4, which states that an indication can be "include[d] in the report." '614 Pat. at Fig. 4. But this does nothing to remedy the complete lack

of disclosure as to how the claimed function of "sending of an indication to the system station" is achieved. It also provides no information as to how an "indication" would be included in the report, and suffers from the same deficiencies discussed above—that the claim does not recite sufficient structure as to how such a report, or any included indication, would be sent to the system station.

Because WSOU is unable to identify any algorithm detailing how the claimed function of "sending of an indication to the system station" is achieved, claims 6 and 13 are invalid for indefiniteness.

> 3. **"the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension"** ('614 Patent, Claim 14)

| OnePlus's Proposed Construction | WSOU's Proposed Construction |
| --- | --- |
| This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: indefinite.<br>**Structure**: indefinite.<br><br>Alternatively:<br><br>**Function**: processing an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension.<br>**Structure**: none disclosed.<br><br>In either instance, the claim is indefinite. This proposed construction supersedes Defendant's Proposed Claim Constructions served on August 10, 2021. | Plain and ordinary meaning: This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite.<br><br>If the Court deems a construction is necessary:<br><br>"the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at the least the following:<br><br>"process a signal signifying that the buffer size of the intermediate node is extended from that of the user equipment and information of the size of the extension" |

OnePlus asserts two distinct indefiniteness arguments, one concerning the language of the recited function and the other based on the lack of disclosure in the specification of corresponding

13

structure to support a § 112, ¶ 6 construction. WSOU does not dispute that, if this claim is found to invoke § 112, ¶6, the claim is invalid for indefiniteness for lack of disclosed corresponding structure. WSOU argues only that the term does not invoke § 112, ¶ 6, and that the claim itself—*i.e.*, the purported function—is not indefinite.

***The disputed phrase is subject to § 112, ¶ 6.*** WSOU contends that the Claim's recitation of "memory," "computer program code," and "processor" do not invoke § 112, ¶ 6 for the same reasons as discussed above. Pl.'s Resp. Br. at 23-24. For all the same reasons explained above, this phrase—which depends from claim 13 and again recites "memory," "computer program code," and "processor"—invokes § 112, ¶ 6.

***The claimed function itself is also indefinite***. WSOU argues that the phrase "process an indication" should be analyzed for indefiniteness by re-writing it as "processing an indication by taking the information about buffer size into account and performing operations on the data." Pl.'s Rep. Br. at 24. In other words, WSOU equates "process" with (1) "taking into account" and (2) "performing an operation on data." But these two generic phases add no explanation as to *how* information would be taken into account or *how* or *what* operation would be performed on the data. These phrases are just as generic as "process" and do not provide a skilled artisan with reasonable certainty as to the meaning of the claim. WSOU's inability to clarify this term demonstrates that even WSOU cannot articulate with a reasonable level of specificity what "processing an indication" means. WSOU's attempted clarification creates more questions than answers as to the purported function, confirming indefiniteness.

WSOU points to three portions of the specification purportedly explaining why the claimed function is not indefinite. The cited portions of the specification do not cure the claim's indefiniteness. WSOU's first passage explains that a buffer status report or "any other appropriate

14

metric" can be used to reflect the buffer size. Pl.'s Resp. Br. at 24-25 (quoting 6:62-7:1). This provides no additional information as to how the indication would be "processed." WSOU's second passage discusses "generat[ing] a new report … [to] include information regarding its buffer.". *Id.* at 25 (quoting 7:18-22). This simply explains that buffer information should be included in a report. It does not provide any direction on how an indication is being processed—or taken into account or having an operation performed on it. WSOU's third identified passage mentions that the indication is related to "the buffering capabilities" of the relay node. *Id.* at 25 (quoting 7:30-41). This discusses what information the "indication" is related to. It says nothing about how the claimed indication is processed.

The only information the specification provides regarding the indication is that it can be included in the buffer status report. *See* '614 Pat. at Fig. 4. This is insufficient to show how such an indication is "processed" as recited in the claim.[3]

***WSOU does not dispute that the structure is indefinite***. As explained above, even if the Court finds that the function is not indefinite, WSOU has not identified any structure that purportedly achieves the claimed function and does not dispute that the '614 Patent does not disclose any such structure. If the Court finds this term is subject to § 112, ¶ 6, there is no dispute that this term is invalid as indefinite for lack of disclosed sufficient structure.

## V.   CONCLUSION

OnePlus requests that the Court adopt its proposed constructions for the term "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" and find the remaining terms indefinite.

---

[3] To the extent the Court finds that the function is not indefinite, the phrase "process an indication" should be limited to "including the indication in the buffer status report."

15

Dated: September 28, 2021

/s/   *Michael J. Lyons*
Michael J. Lyons*
California Bar No. 202284
michael.lyons@morganlewis.com
Ahren C. Hsu-Hoffman
Texas Bar No. 24053269
Ahren.hsu-hoffman@morganlewis.com
Jacob J.O. Minne*
California Bar No. 294570
jacob.minne@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
T: 650.843.4000
F: 650.843.4001

Elizabeth M. Chiaviello
Texas Bar. No. 24088913
elizabeth.chiaviello@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201
T: 214.466.4000
F: 214.466.4001

*Admitted *pro hac vice*

***Attorneys for Defendant OnePlus Technology (Shenzhen) Co. Ltd.***

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on September 28, 2021, a true and correct copy of the foregoing document was served via electronic mail on counsel of record per Local Rule CV-5.

/s/ *Michael J. Lyons*
Michael J. Lyons