**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>          Plaintiff,<br><br>     v.<br><br>ONEPLUS TECHNOLOGY (SHENZHEN) CO., LTD.,<br><br>          Defendant. | CIVIL ACTION 6:20-cv-00952-ADA<br>CIVIL ACTION 6:20-cv-00953-ADA<br>CIVIL ACTION 6:20-cv-00956-ADA<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
SPECIAL MASTER'S REPORT AND RECOMMENDATION
REGARDING CLAIM CONSTRUCTION
<u>(GROUP I PATENTS)</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

TABLE OF ABBREVIATIONS ................................................................................................. iv

I.     INTRODUCTION ........................................................................................................... 1

II.    RESPONSE REGARDING THE '776 PATENT......................................................... 1

    A.   "[transmitter] attempting access to a wireless network" (Claim 1) / "transmitter configured to attempt access to a wireless network..." (Claim 10) ............................. 1

    B.   "processor" (Claims 10, 11, 12, 14, 15, 16, 18, 19)............................................. 5

    C.   "program of instructions" (Claim 19) .................................................................. 8

III.   RESPONSE REGARDING THE '614 PATENT ........................................................ 11

    A.   Claims 13 and 14: Response to OnePlus's Objections Regarding Whether § 112, ¶ 6 Is Invoked .................................................................................................................. 12

    B.   Claims 6, 13, and 14: Response to OnePlus's Objections Regarding Whether Sufficient Structure Is Disclosed in the Specification .......................................................... 13

    C.   Claim 14: Response to OnePlus's Objections Regarding Indefiniteness ........................ 15

IV.    RESPONSE REGARDING THE '876 PATENT ........................................................ 16

    A.   "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" (Claim 1) ................................................................................. 16

V.     CONCLUSION............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cellular Commc'ns Equip. LLC v. AT&T, Inc.*,
No. 2:15-cv-576, 2016 WL 7364266 (E.D. Tex. Dec. 19, 2016) ..............................................5

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988).............................................................................................7

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022) .................................................................................9, 10, 13

*Dyfan, LLC v. Target Corp.*,
No. 6:19-cv-179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020) ..........................9, 13

*Finjan, Inc. v. Eset, LLC*,
No. 3:17-cv-183, 2017 WL 5501338 (S.D. Cal. Nov. 14, 2017)...........................................2

*Finjan, Inc. v. Qualys Inc.*,
No. 4:18-CV-7229, 2020 WL 3101040 (N.D. Cal. June 11, 2020).......................................4

*Fisher-Rosemount Sys., Inc. v. ABB Ltd.*,
No. 4:18-cv-178, 2019 WL 6830806 (S.D. Tex. Dec. 12, 2019) .......................................5, 6

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
No. 2:16-cv-57, 2017 WL 2691227 (E.D. Tex. June 22, 2017) .............................................4

*In re Katz Interactive Call Processing Patent Litigation*,
639 F.3d 1303 (Fed. Cir. 2011)...........................................................................11, 13, 14, 15

*Mobility Workx, LLC v. T-Mobile US, Inc.*,
No. 4:17-cv-567, 2018 WL 3636548 (E.D. Tex. July 31, 2018) ..........................................3

*Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n*,
161 F.3d 696 (Fed. Cir. 1998)..................................................................................................8

*Smartflash LLC v. Apple Inc.*,
No. 6:13-cv-447, 2015 WL 4208754 (E.D. Tex. July 7, 2015) ............................................5

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)..............................................................................................3

*Syncpoint Imaging, LLC v. Nintendo of Am. Inc.*,
No. 2:15-cv-00247-JRG-RSP, 2016 WL 55118 (E.D. Tex. Jan. 5, 2016) ...............................8

*Typemock, Ltd. v. Telerik, Inc.*,
    No. 17-cv-10274, 2018 WL 4189692 (D. Mass Aug. 31, 2018) ...............................................5

*WSOU Invs. LLC v. Google LLC*,
    No. 6:20-cv-571-ADA, Dkt. 46 (W.D. Tex. June 2, 2021) ............................................6, 7, 13

*ZeroClick, LLC v. Apple Inc.*,
    891 F.3d 1003 (Fed. Cir. 2018).................................................................................. *passim*

**Statutes**

35 U.S.C. § 112, ¶ 6 ............................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 53 advisory committee notes to 2003 amendment  ................................................7

## TABLE OF ABBREVIATIONS

| Abbreviation | Meaning |
|---|---|
| "Plaintiff" or "Brazos" | Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development |
| "Defendant" or "OnePlus" | Defendant OnePlus Technology (Shenzhen) Co., Ltd. |
| "the '776 patent" | U.S. Patent No. 8,149,776 (Dkt. 32-6)[1] |
| "the '614 patent" | U.S. Patent No. 8,767,614 (Dkt. 32-7) |
| "the '876 patent" | U.S. Patent No. 8,477,876 (Dkt. 32-2) |
| "POSITA" | Person of ordinary skill in the art |
| "Cooklev Decl." | September 14, 2021 Declaration of Dr. Todor Cooklev in Support of Plaintiff's Responsive Claim Construction Brief (Group I Patents) (Dkt. 35-1) |

---

[1] Unless otherwise indicated, all docket citations herein refer to docket entries in Civil Action No. 6:20-cv-00952.

## I.     INTRODUCTION

Plaintiff Brazos responds to Defendant OnePlus's Objections to Special Master's Report and Recommendation Regarding Claim Construction (Group I Patents) (C.A. No. 6:20-cv-952, Dkt. 99) in which OnePlus objects to the Special Master's recommendations regarding the constructions for three sets of disputed claim terms in the '776 patent, three sets of disputed claim terms in the '614 patent, and one disputed claim term in the '876 patent.

## II.    RESPONSE REGARDING THE '776 PATENT

### A.     "[transmitter] attempting access to a wireless network" (Claim 1) / "transmitter configured to attempt access to a wireless network..." (Claim 10)

| Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|
| Plain and ordinary meaning. This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. | This claim should be construed under 35 U.S.C. 112, ¶ 6. <br><br> <u>Function</u>: attempting access to a wireless network by sending on a random access channel at a first transmit power a first preamble comprising a signature sequence and by randomly selecting the signature sequence from a set of signature sequences <br> <u>Structure</u>: none disclosed <br><br> The claim is indefinite. | Not subject to § 112, ¶ 6. Plain-and-ordinary meaning. |

The Court should adopt the Special Master's recommendation for the "transmitter" claim phrases, which are not a means-plus-function terms and need no further construction.  Dkt. 93 at 23-26, 60.  Given that the "transmitter" claim terms do include the word "means," the Court must give effect to the presumption against applying § 112, ¶ 6, rebuttable only "if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites

function without reciting sufficient structure for performing that function." *ZeroClick, LLC v. Apple Inc.*, 891 F.3d 1003, 1007 (Fed. Cir. 2018) (citation omitted)).  "In determining whether this presumption has been rebutted, the challenger must establish by a preponderance of the evidence that the claims are to be governed by § 112, ¶ 6." *Id*. (citation omitted).  OnePlus has failed to rebut this presumption.

"'Transmitter' is not a nonce term." *Finjan, Inc. v. Eset, LLC*, No. 3:17-cv-183, 2017 WL 5501338, at *3 (S.D. Cal. Nov. 14, 2017).  To the contrary, based on the claim construction record, which included unrebutted expert opinion from Brazos's expert Dr. Cooklev, the Special Master found that "'transmitter' is a term of art that has a very well-understood meaning to a POSITA" and "connotes sufficient structure to prevent the application of § 112, ¶ 6."  Dkt. 93 at 23-24 ("Based on the undersigned's education and experience, the undersigned agrees with Dr. Cooklev that a POSITA would understand that the term 'transmitter' refers to a combination of hardware and software that is capable of transmitting a signal and connotes structure to a POSITA."); *see also* Dkt. 35-1 (Cooklev Decl.) at ¶¶ 39-40.[2]  Furthermore, "[b]ecause the surrounding claim language describes the output of the transmitter in both claims [1 and 10] and the input to the transmitted in Claim 10, the surrounding claim language provides structure for this term."  Dkt. 93 at 91.

OnePlus does not even dispute any of that.  Rather, OnePlus argues that "transmitter" terms invoke § 112, ¶ 6 because the claims allegedly lack sufficient structure for the transmitter to perform the function of "randomly selecting the signature sequence from a set of signature sequences."  Dkt. 99 at 1-3.  OnePlus's argument, however, is fundamentally flawed because it is built entirely upon a strawman.

---

[2] OnePlus opted not to depose Dr. Cooklev, and not to submit a rebuttal expert declaration.

Contrary to OnePlus's strained reading, the plain language of claims 1 and 10 of the '776 patent does not actually require a transmitter to randomly select from a set of signature sequences. Rather, the "transmitter" need only send (claim 1), or be configured to send (claim 10), "… a first preamble comprising a signature sequence that ***is randomly selected*** from a set of signature sequences; …" '776 patent at claims 1, 10 (emphasis added).  Unlike with the transmitter's claimed action of "sending," the claims do not use the words "is randomly selected" as an action the transmitter must take, but instead use these words to convey the nature of the recited signature sequence at the time of transmission by the transmitter.  How the signature sequence comes to be "randomly selected" is entirely independent of the transmitter.  *See, e.g., Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290-91 (Fed. Cir. 2015) (rejecting defendant's contention that "being provided to" was an "active step of the claimed method"; "We find that 'being provided to' is not used as a verb in claim 38, but instead is a part of a phrase that conveys information about the 'pre-processing parameters.'"); *Mobility Workx, LLC v. T-Mobile US, Inc.*, No. 4:17-cv-567, 2018 WL 3636548, at *15-16 (E.D. Tex. July 31, 2018) (in construing the phrase "at least one foreign agent identified for each of the geographical future states," rejecting defendant's argument that "'identified for' is a dynamic verb phrase that describes an active step of identification," holding instead that "the disputed term is sufficiently clear on its face that the system is configured such that at least one foreign agent is (or has been) identified for each of the geographical future states.").

The Special Master rightly saw through OnePlus's façade, finding that "the claim language only requires that the transmitter transmit the randomly selected signature string" and "does not go so far as to require that the transmitter randomly select the signature sequence from a set of signature sequences."  Dkt. 93 at 25 25.  "Rather, the claim language only requires that

the signature sequence is randomly selected, but does not specify that a particular entity, e.g., the

transmitter, does the random selection."  *Id*.[3]

OnePlus also fails to point to any other evidence in the intrinsic record that supports its

twisted reading of the claims.  *See* Dkt. 93 at 26.  In fact, the specification explains that the user

equipment ("UE") includes components in addition to the transmitter—for example, processors

and memory—and that the UE randomly selects the signature sequence from a set of sequences.

*See, e.g.*, '776 patent at 2:44-3:34 ("[T]he processing means randomly selects from a set of

signature sequences."), 5:62-6:24 ("[T]he UE randomly selects a signature sequence and submit a

first preamble that has the randomly generated/selected signature sequence on the RACH"); *see*

*also* Dkt. 35 at 7; Dkt. 47 at 5-6.

Even if, *arguendo*, OnePlus were able to rebut the presumption against applying § 112,

¶ 6 for the "transmitter" terms, OnePlus still could not satisfy the clear-and-convincing-evidence

standard for proving indefiniteness.  *See* Dkt. 35 at 7-8; Dkt. 35-1 (Cooklev Decl.) at ¶¶ 41-49.

---

[3] In light of OnePlus's mischaracterization of the claims, the Special Master correctly noted that
OnePlus had failed to distinguish the *Huawei* case.  Dkt. 93 at 25-26; *see Huawei Techs. Co. Ltd.
v. T-Mobile US, Inc.*, No. 2:16-cv-57, 2017 WL 2691227, at *25-27 (E.D. Tex. June 22, 2017)
(holding that the claim phrase "a transmitter configured to receive," "send," or "deduce" was not
a means-plus-function term nor indefinite where the "claim language further describe[d] the
inputs and outputs of these components, and what it is that they "receive," "send," or "deduce");
*see also Finjan, Inc. v. Qualys Inc.*, No. 4:18-CV-7229, 2020 WL 3101040, at *15-16 (N.D. Cal.
June 11, 2020) (finding "transmitter" not to be means-plus-function or indefinite).

B.    "processor" (Claims 10, 11, 12, 14, 15, 16, 18, 19)

| Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|
| Plain and ordinary meaning. This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite. | This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>Function: determining that access attempts are unsuccessful<br>Structure: none disclosed<br><br>The claim is indefinite. | Not subject to § 112, ¶ 6. Plain-and-ordinary meaning. |

The Court should also adopt the Special Master's recommendation for "processor,"
which is not a means-plus-function term and needs no further construction. Dkt. 93 at 28-29, 61.
As with the "transmitter" terms, the Court must give effect to the presumption against applying
§ 112, ¶ 6 to "processor." *ZeroClick*, 891 F.3d at 1007. OnePlus cannot rebut this presumption.

"Unlike the term 'module' in *Williamson*, 'processor' is not a 'nonce word'" but "rather
connotes a class of structures." *Smartflash LLC v. Apple Inc.*, No. 6:13-cv-447, 2015 WL
4208754, at *3 (E.D. Tex. July 7, 2015); *Cellular Commc'ns Equip. LLC v. AT&T, Inc.*, No.
2:15-cv-576, 2016 WL 7364266, at *15-16 (E.D. Tex. Dec. 19, 2016); *see also* Dkt. 35 at 9
(collecting similar cases). "A 'processor' in the computer arts is commonly understood to refer
to the component of a computer that executes software instructions and performs computations."
*Typemock, Ltd. v. Telerik, Inc.*, No. 17-cv-10274, 2018 WL 4189692, at *7 (D. Mass Aug. 31,
2018). "[A]s … courts have noted, processor generally refers to a tangible object that can be
purchased and that can perform certain functions even without specific instructions. Thus,
unlike terms such as 'means,' 'element,' and 'device' that typically do not connote structure,
'processor' can on its own recite at least some structure to persons of ordinary skill in the art."
*Fisher-Rosemount Sys., Inc. v. ABB Ltd.*, No. 4:18-cv-178, 2019 WL 6830806, at *16 (S.D. Tex.

Dec. 12, 2019) (internal citation omitted).  "The term processor is 'not used as generic terms or black box recitations of structure or abstractions, but rather as a specific reference' to processors that are known in the art." *Id.* (quoting *Zeroclick*, 891 F.3d at 1008).

Consistent with this case law, as well as the intrinsic record and unrebutted expert testimony from Dr. Cooklev, the Special Master found that the claim term "processor" "connotes a class of structures" "of a computer that executes software" and has its structure further elucidated in "the surrounding claim language in the independent and dependent claims," which recite other structural components to or with which the processor may be coupled or interact. Dkt. 93 at 28-29; *see also* Dkt. 35-1 (Cooklev Decl.) at ¶¶ 51, 52, 56.  Accordingly, the Special Master correctly concluded that OnePlus failed to meet its burden to "overcome the presumption that this [processor] term is subject to § 112, ¶ 6."

The Court should reject all of OnePlus's objections to the Special Master's reliance on "the surrounding claim language" (Dkt. 99 at 4-6) because they are based on attorney conjecture, rather than evidence, about the sufficiency of the claimed structure to perform the recited processor functions, and therefore ineffective to overcome the presumption against applying § 112, ¶ 6.

Furthermore, OnePlus's objections submission, like its claim construction briefing, emphasizes its reliance on this Court's claim construction order in *WSOU v. Google*.  Dkt. 99 at 3-4.  That claim construction order, however, is simply an order without opinion regarding different patents than those at issue here, and is therefore of limited—if any—persuasive value. Indeed, the Court in *WSOU v. Google* found that the term "processor" in one of the patents had its plain and ordinary meaning and did not invoke § 112, ¶ 6.  *WSOU Invs. LLC v. Google LLC*, No. 6:20-cv-571-ADA, Dkt. 46 at 7-8 (W.D. Tex. June 2, 2021).  OnePlus still fails to offer any

explanation for why it believes the Court's ruling regarding some "processor" terms (in an unrelated case) should be more persuasive than its ruling regarding the "processor" term that the Court found not to invoke § 112, ¶ 6.  The Special Master did not find the *WSOU v. Google* compelling, and neither should the Court.

The Court should also overrule OnePlus's objection to the Special Master's reliance on his own knowledge and experience.  Dkt. 99 at 4.  Contrary to OnePlus's argument, the Special Master was permitted to rely on his background and experience in the relevant field—of which the parties were on ample notice—in assessing the claim construction issues for which the Court appointed him without objection.  *See* Dkt. 38; Dkt. 53; Fed. R. Civ. P. 53 advisory committee notes to 2003 amendment ("The court's responsibility to interpret patent claims as a matter of law, for example, may be greatly assisted by appointing a master who has expert knowledge of the field in which the patent operates."); *see also Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1566 (Fed. Cir. 1988) ("A party cannot wait to see whether he likes a master's findings before challenging the use of a master.")  Furthermore, even if, *arguendo*, such reliance were objectionable, any error was *de minimis*, as the Special Master's findings were well-supported by record evidence, including unrebutted expert opinion from Dr. Cooklev.

### C.    "program of instructions" (Claim 19)

| Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|
| Plain and ordinary meaning. This claim should not be construed under 35 U.S.C. 112, ¶ 6, nor is it indefinite. | Preamble limiting; This claim should be construed under 35 U.S.C. 112, ¶ 6.<br><br>Function: attempting access to a wireless network by sending a signature sequence on a random access channel<br>Structure: none disclosed<br><br>The claim is indefinite. | Preamble is limiting.<br><br>Plain-and-ordinary meaning. |

The Court should adopt the Special Master's recommendation for the claim term "program of instructions," which is not a means-plus-function term and needs no further construction.  Because "program of instructions" does include the word "means," the Court must give effect to the presumption against applying § 112, ¶ 6.  *ZeroClick*, 891 F.3d at 1007. OnePlus cannot rebut this presumption.

As Dr. Cooklev's unrebutted expert opinion established, a POSITA would understand a "program for instructions" to refer to software containing a set of instructions that, when executed by a processor, carry out a task.  Dkt. 35-1 (Cooklev Decl.) at ¶ 59.  In the context of claim 19 of the '776 patent, the term connotes structure sufficient to avoid means-plus-function treatment.  *See Syncpoint Imaging, LLC v. Nintendo of Am. Inc.*, No. 2:15-cv-00247-JRG-RSP, 2016 WL 55118, at *23 (E.D. Tex. Jan. 5, 2016) ("The term 'instructions,' like 'detector' in *Personalized Media* and 'circuit' in *Linear Technology*, connotes sufficiently definite structure to avoid invoking § 112, ¶ 6." (citing *Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 704–05 (Fed. Cir. 1998); *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1320 (Fed. Cir. 2004))).

Throughout claim construction proceedings, including in its briefing and at the *Markman* hearing, OnePlus relied heavily on the Court's opinion in *Dyfan, LLC v. Target Corp*., No. 6:19-cv-179-ADA, 2020 WL 8617821 (W.D. Tex. Nov. 25, 2020), to support its claim construction position for this term.  *See* Dkt. 32 at 13-14; Dkt. 46 at 7; Dkt. 99-3 (10/28/21 *Markman* Hearing Tr.) at 38-46, 50.  The Special Master, however, agreed with Brazos that OnePlus was misapplying *Dyfan* to this case.  Dkt. 93 at 31-32; Dkt. 99-3 at 42-43.  Moreover, earlier this year, the Federal Circuit reversed *Dyfan*, holding that the District Court had erred by not crediting the plaintiff's unrebutted expert testimony that demonstrated that the computer "code"/"application" claim limitations do not recite 'purely functional language,'" and by not giving proper effect to the presumption against applying § 112, ¶ 6 to claim terms lacking the word "means."  *Dyfan, LLC v. Target Corp*., 28 F.4th 1360, 1367-68 (Fed. Cir. 2022) (citing *Zeroclick*, 891 F.3d at 1006-07).  Notwithstanding that reversal, OnePlus preposterously asserts that the Federal Circuit's decisions in *Dyfan* and in *ZeroClick* support OnePlus's § 112, ¶ 6 position.  Dkt. 99 at 7-8.  They do not.

Like in *Dyfan*, Brazos proffered unrebutted expert opinion from Dr. Cooklev that "the term 'program of instruction' is a commonly used and well-understood term in the art that connotes structure to a person of ordinary skill in the art, who would understand a 'program of instructions' to refer to software containing a set of instructions that, when executed by a processor, carry out a task."  Dkt. 35-1 (Cooklev Decl.) at ¶ 59; *see also id*. at ¶ 60 ("The claim informs a person of ordinary skill in the art how the 'programs of instructions' would interact with other components to achieve the recited functionality.")

While OnePlus argues that Brazos presented no evidence showing that the claimed "program of instructions" was available "in the prior art" or "off-the-shelf" (Dkt. 99 at 8),

OnePlus is the party that bears the burden of overcoming the presumption against applying § 112, ¶ 6, yet failed to present any evidence (beyond attorney conjecture) that "program of instructions" would have connoted insufficient structure to a POSITA.  Moreover, as the Federal Circuit recently explained:  "Unlike in the mechanical arts, the specific structure of software code and applications is partly defined by its function."  *Dyfan*, 28 F.4th at 1368.  "In determining whether software limitations like those at issue here recite sufficient structure, we can look beyond the initial 'code' or 'application' term to the functional language to see if a person of ordinary skill would have understood the claim limitation as a whole to connote sufficiently definite structure."  *Id*. at 1368-69.  As the Special Master rightly found based on the intrinsic record, unrebutted expert testimony, and case law, "the term 'program of instructions' connotes structure sufficient to avoid means-plus-function treatment[] … because the claim 'recites the objectives and operations of the instructions.'"  Dkt. 93 at 32 (quoting *Syncpoint*, 2016 WL 55118, at *23 (citing *Linear Tech.*, 379 F.3d at 1320).  The Special Master even listed the "objectives and operations of the instructions in the 'program of instructions' limitations" recited in claim 19, and found that they include "well-understood structural components of electronic communication devices."  *Id*.  OnePlus presents no evidence to the contrary.

Even if, *arguendo*, OnePlus were able to rebut the presumption against applying § 112, ¶ 6 for "program of instructions," OnePlus still could not satisfy the clear-and-convincing-evidence standard for proving indefiniteness.  *See* Dkt. 35 at 15; Dkt. 35-1 (Cooklev Decl.) at ¶¶ 58-64; Dkt. 47 at 8-9.

## III.    RESPONSE REGARDING THE '614 PATENT

| Claim Term | Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|---|
| "means for causing sending of a buffer information report to a system station" (Claim 6)<br><br>"at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus ... sending of a buffer information report to a system station" (Claim 13) | These terms are not indefinite. No construction necessary – plain and ordinary meaning.<br><br>Claim 13 should not be construed under 35 U.S.C. § 112, ¶ 6. To the extent the Court treats the terms as means-plus-function:<br><br>**Function**: "for causing sending of a buffer information report"<br>**Structure**: processor and memory (refer 6:4-9) | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: causing sending of a buffer information report to a system station.<br>**Structure**: none disclosed.<br><br>The claim is indefinite. | **Claim 6:**<br>Subject to § 112, ¶6<br><br>**Function**: causing sending of a buffer information report to a system station.<br>**Structure**: Pursuant to *In re Katz*, the data processing unit 32, memory 31, and input/output interface 34 in Fig. 3, and equivalents.<br><br>**Claim 13:**<br>Not subject to § 112, ¶ 6. Plain-and-ordinary meaning |
| "means for causing sending of an indication to the system station" (Claim 6)<br><br>"at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus . . . sending of an indication to the system station" (Claim 13) | These terms are not indefinite. No construction necessary – plain and ordinary meaning.<br><br>Claim 13 should not be construed under 35 U.S.C. § 112, ¶ 6. To the extent the Court treats the terms in claims 6 and/or 13 as means-plus-function:<br><br>**Function**: "for causing sending of an indication to the system station"<br>**Structure**: processor and memory (refer 6:4-9) | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: causing sending of an indication to the system station.<br>**Structure**: none disclosed.<br><br>The claim is indefinite. | **Claim 6:**<br>Subject to § 112, ¶6<br><br>**Function**: causing sending of an indication to a system station.<br>**Structure**: Pursuant to *In re Katz*, the data processing unit 32, memory 31, and input/output interface 34 in Fig. 3, and equivalents.<br><br>**Claim 13:**<br>Not subject to § 112, ¶ 6. Plain-and-ordinary meaning |

| "the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension" (Claim 14) | Plain and ordinary meaning: This claim should not be construed under 35 U.S.C. § 112, ¶ 6, nor is it indefinite.<br><br>If the Court deems a construction is necessary:<br><br>"the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following:<br><br>process a signal signifying that the buffer size of the intermediate node is extended from that of the user equipment and information of the size of the extension" | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: indefinite. **Structure**: indefinite.<br><br>Alternatively:<br>**Function**: processing an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension. **Structure**: none disclosed.<br><br>In either instance, the claim is indefinite. This proposed construction supersedes Defendant's Proposed Claim Constructions served on August 10, 2021 | Not subject to § 112, ¶ 6. Plain-and-ordinary meaning. |

**A.      Claims 13 and 14: Response to OnePlus's Objections Regarding Whether § 112, ¶ 6 Is Invoked**

The Special Master correctly concluded that the disputed claim terms in claims 13 and 14 of the '614 patent are not means-plus-function terms and needs no further construction.  Dkt. 93 at 36-37, 61-63.  These claims do not include the word "means," so the Court must give effect to the presumption against applying § 112, ¶ 6.  *ZeroClick*, 891 F.3d at 1007.  Because OnePlus cannot rebut this presumption, the Court should adopt the Special Master's recommendation.

The Special Master properly credited Dr. Cooklev's unrebutted expert opinion that the terms "computer program code," "processor," and "memory" in claims 13 and 14 "are all

commonly used and well-understood terms with structural meaning in the art," and rejected OnePlus's legally and factually unsupported contention that these terms are nonce words that fail to connote sufficient structure. Dkt. 93 at 36; Dkt. 35-1 (Cooklev Decl.) at ¶¶ 65-70, 75-76, 79-81; *see also* Dkt. 35 at 18 (collecting cases rejecting the proposition that these types of claim terms invoke § 112, ¶ 6).

The district court cases cited by OnePlus regarding "code for" claim language (Dkt. 99 at 11) are inapposite and outweighed by the substantial body of district court and Federal Circuit case law cited by Brazos, and all issued well before the Federal Circuit's *Dyfan* opinion finding "code"/"application" claim terms to connote sufficient structure, particularly in light of unrebutted expert testimony and the presumption against applying § 112, ¶ 6. *Dyfan*, 28 F.4th at 1368. OnePlus's attempts to distinguish *Dyfan* (and *Zeroclick*) fall flat. And, as previously discussed (*supra* § II.B.), OnePlus's reliance on the order-without-opinion in the unrelated *WSOU v. Google* case is misplaced. *See* Dkt. 99 at 11-12.

**B.   Claims 6, 13, and 14: Response to OnePlus's Objections Regarding Whether Sufficient Structure Is Disclosed in the Specification**

Like the Special Master, the Court should reject OnePlus's indefiniteness arguments for claims 6, 13, and 14. Dkt. 93 at 36-37. As an initial matter, because claims 13 and 14 do not invoke § 112, ¶ 6 (*see supra* § III.A.), OnePlus has no basis to assert that these claims are indefinite. But even if they did invoke § 112, ¶ 6, they would not be indefinite because the specification discloses sufficient corresponding structure for the recited functionalities. *See* Dkt. 35 at 19-20, 22-23, 24-25; Dkt. 47 at 10-11, 13, 14-15; Dkt. 35-1 at ¶¶ 71-74, 77-78, 82.

With regard to claim 6, which uses the word "means" and the parties agreed invokes § 112, ¶ 6, the Special Master properly concluded that this claim is sufficiently definite. Dkt. 93-94 at 37-38. In doing so, the Special Master correctly found the Federal Circuit's reasoning in *In*

*re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303 (Fed. Cir. 2011), to be applicable to the "means for causing sending" claim terms in claim 6.  Dkt. 93-94 at 37-38.  In *Katz*, the Federal Circuit vacated the district court's finding of indefiniteness with respect to claims reciting, for example, "means to receive … data signals," "means for storing … data signals," and "means for processing … data signals," which the district court had held lacked sufficient structure in the specification.  *Katz*, 639 F.3d at 1316. The Federal Circuit held that the district court erred by "interpret[ing] the principles of another line of case (*WMS Gaming*, *Aristocrat*, and *Harris*) too broadly" when it "interpreted those cases to require that 'the specification ... disclose an algorithm for any recited function' that is performed solely or predominantly by a general purpose computer."  *Id*.  The Federal Circuit noted that, in contrast to that line of cases, "Katz has not claimed a specific function performed by a special purpose computer, but has simply recited the claimed functions of 'processing,' 'receiving,' and 'storing[,]' … which can be achieved by any general purpose computer without special programming."  *Id*.  "As such, it was not necessary to disclose more structure than the general purpose processor that performs those functions."  *Id*.  Accordingly, the Federal Circuit held that the "claims do not run afoul of the rule against purely functional claiming, because the functions of 'processing,' 'receiving,' and 'storing' are coextensive with the structure disclosed, *i.e.*, a general purpose processor."  *Id*.

The same rationale applies here.  The disputed phrases in claim 6 of the '614 patent are directed to causing the sending of a buffer information report—*i.e.*, causing the transmission of data—which can be accomplished by a general purpose processor without special programming. Thus, like in *Katz*, where claiming a means for receiving data did not require an extensive algorithm to support its functionality, the '614 patent's recitation of means or components for

causing sending of data does not require anything more than what is already disclosed in the patent.

OnePlus's arguments to the contrary (Dkt. 99 at 13) are without merit.  Without evidence, OnePlus mischaracterizes claim 6's "means for causing sending" as requiring "more than simple generic processing and … special programming."  *Id*.  As the Special Master correctly found, "[t]he claimed function only requires 'causing' the transmission of buffer information report (data)" and  "does not require a more complicated function such as assembling and transmitting the buffer information report."

### C.     Claim 14: Response to OnePlus's Objections Regarding Indefiniteness

The Special Master correctly rejected OnePlus's alternative indefiniteness argument that for claim 14 as failing to satisfy OnePlus's clear-and-convincing-evidence burden of proof.  Dkt. 93 at 44.  Contrary to OnePlus's assertion, the term "process" in the phrase "process an indication" is not ambiguous and does not render the claim indefinite.  Dkt. 99 at 14-15. Regardless of the breadth of the term "process," a POSITA would have reasonable certainty about what the term meant.  Dr. Cooklev opined without rebuttal: "'Process' is a well-understood and widely used verb in electrical and computer engineering, as reflected by a variety of technical dictionaries."  Dkt. 35-1 at ¶ 80 (collecting dictionary definitions).  Based on "the express language of claim 14 and common parlance," a POSITA would understand "that 'process an indication' refers to the apparatus (which has at least one processor) processing an indication by **taking the information** about buffer size into account and **performing operations on the data**."  *Id*. at ¶ 81 (emphases added).

OnePlus's objections to this common understanding as "ambiguous" (Dkt. 99 at 15) is based entirely on attorney conjecture and should be rejected as insufficient to satisfy the clear and convincing evidence standard for proving indefiniteness.  Indeed, as Brazos explained in its claim construction briefing, a litany of courts have found the verb "process" or "processing" in

the computer arts context to be sufficiently definite and have a plain and ordinary meaning either requiring no construction or along the same lines WSOU proposed. *See* Dkt. 47 at 14-15 (collecting cases).

## IV.    RESPONSE REGARDING THE '876 PATENT

### A.    "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" (Claim 1)

| Proposed Construction | Brazos's Proposal | OnePlus's Proposal | Special Master's Recommendation |
|---|---|---|---|
| **Original Proposal** (pre-*Markman* hearing) | Plain and ordinary meaning, which is: "varying a rate for reporting information about the status of the communication channel from a mobile station to a base station **as a function of the presence or absence of a reception of a data transmission at the mobile station**" | "varying a rate for reporting channel quality information from a mobile station to a base station **using only the mobile station's detection of the presence or absence of an actual data transmission from the base station as the trigger for varying the rate, and not varying the rate based on the content of the data transmission or any other message or signal instructing such action**" | Plain-and-ordinary meaning[1]  [1] **Notes not for the jury:** 1) The plain-and-ordinary meaning of "function of" includes what follows, but is not limited only to what follows. 2) The plain-and-ordinary meaning of "data transmission" excludes control signals/instructions. |
| **Updated Proposal** (post-*Markman* hearing) | "varying a rate for reporting information about the status of the communication channel from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station, **and not solely based on the content of the data transmission**" | "data transmission" should be construed according to its plain and ordinary meaning, **except that it does not include an instruction, such as a control signal** | |

As set forth in Brazos's June 14, 2022 objections submission, the Court should construe

the "varying …" claim phrase in claim 1 of the '876 patent as Brazos has proposed in its updated proposed construction: to cover rate-varying that is **based at least on the presence or absence of a reception of a data transmission** at the mobile station, **and not solely based on the content (*i.e.*, signals/instructions) of the data transmission**. Dkt. 100 at 5-7. As already explained (Dkt. 100 at 6), the Special Master erred in rejecting Brazos's updated proposed construction as purportedly rewriting the claim term. Dkt. 93 at 20. Brazos did no such thing, but instead adopted language that OnePlus had used in its original proposed construction for this claim term. This was meant streamline the claim construction dispute by adopting language that OnePlus was already using.

Moreover, Note #2 is not supported by evidence and contrary to OnePlus's original proposed construction for this term and claim construction arguments. In that regard, contrary to Note #2, the plain and ordinary meaning of "data transmission" can actually include "control signals/instructions." OnePlus's original proposed construction acknowledged that a "data transmission" can include control signals/instructions, stating: "… based on **the content of the data transmission or any other message or signal instructing such action**." Dkt. 32 at 3 (emphasis added). At the *Markman* hearing, OnePlus conceded that excluding control signals/instructions from the scope of "data transmission" would "go beyond the plain and ordinary meaning." Dkt. 99-3 (10/28/21 *Markman* Hearing Tr.) at 4; *see also id*. at 11 ([Rate-varying] "continues as a function of the presence or absence of a reception of a data transmission. That it's not just based on a data transmission. ***It's as a function of a lot of elements of a data transmission***." (emphasis added)). Because the Special Master agreed with Brazos that "Applicant's prosecution statements do not meet the 'exacting' standard required to find there was a disclaimer" (Dkt. 93 at 15), the Special Master erred by limiting the "plain and

ordinary meaning" of "data transmission" to exclude control signals/instructions in Note #2.

Still, notwithstanding those errors, Brazos understands the Special Master's recommended construction as a whole to be consistent with Brazos's proposal. *See* Dkt. 100 at 6-7. The Special Master's second "note not for the jury" states that the words "data transmission" in the disputed claim phrase "excludes control signals/instructions," which means that the claimed rate varying cannot be based entirely on the reception of a control signal/instruction. *See* Dkt. 93 at 21. However, the Special Master's first "note not for the jury" states that the words "function of" in the disputed claim phrase "includes what follows, but is not limited only to what follows." *Id.* Thus, under the Special Master's recommended construction, the claimed rate varying need only be based on the presence or absence of a reception of a data transmission. If a system's rate varying <u>also occurs</u> based on the receipt of a control signal/instruction, that is of no moment and does not take the system outside the scope of the claim.

The Court should overrule OnePlus's objections to the Special Master's recommended "notes not for the jury." First, without any explanation and without stating any objection to Note #1, OnePlus appears to be asking the Court to present only Note #2 (regarding the scope of "data transmission") to the jury, but not Note #1 (regarding the scope of "function of"). To the extent Note #2 is presented to the jury, so should Note #1. OnePlus's submission offers no reason for Note #1 to be treat disparately from Note #2.

Indeed, the Special Master included Note #1 (regarding the scope of "function of") because "the claim language explicitly contradicts" OnePlus's overbroad proposed negative limitation language. Dkt. 93 at 17, 19-20. As the Special Master found, "the claim language explicitly provides that the rate is varied '<u>as a function</u> of the presence or absence of a reception

18

of a data transmission at the mobile station,' and not 'only the mobile station's detection of the presence or absence of an actual data transmission from the base station as the trigger for varying the rate." *Id*. at 17.  The Special Master further found that "none of the prosecution statements Defendant points to limits varying the rate to 'only' detecting the presence or absence of an actual data transmission. *Id*. at 17-18 (further discussing specific prosecution history statements).

Second, OnePlus's objection is premised upon the Court finding that the '876 patent's prosecution history reflects a clear and unmistakable disclaimer of claim scope.  As previously explained in Brazos's previous submissions, there was no disclaimer during prosecution. *See* Dkt. 35 at 3-4; Dkt. 47 at 2-3; Dkt. 100 at 5-6.  The Special Master correctly concluded "[a]fter carefully considering the parties' arguments and the applicable law" that the "prosecution statements do not meet the 'exacting' standard required to find there was a disclaimer." Dkt. 93 at 15, 18.  Furthermore, the Special Master rightly criticized OnePlus's proposal because, "[e]ven if [hypothetically] there was a prosecution disclaimer, Defendant's proposed construction improperly expands the scope of the alleged disclaimer[,] … incorrectly exclud[ing] any 'middle ground' between the approach in Chen (sending an instruction prior to data transmission) and detecting the presence or absence of actual data transmission from the base station." *Id*. at 17.

OnePlus is wrong in arguing that "[t]he Special Master erred by not addressing the applicant's argument" in a June 13, 2007 prosecution statement.  Dkt. 99 at 19.  To the contrary, OnePlus's claim construction briefing never mentioned any June 13, 2007 prosecution statement. *See* Dkt. 32 at 4-6 (discussing prosecution history statements, but not any from June 13, 2007); Dkt. 42 at 2-3 (same).  In fact, OnePlus only first submitted the June 13, 2007 prosecution

19

statement to the Court just two weeks ago, when it filed a copy as Exhibit 5 to its June 14, 2022 objections submission. *See* Dkt. 32-1 at ¶¶ 1-4 (identifying exhibits to OnePlus's Opening Brief related to the '876 patent, but nothing from June 13, 2007); Dkt. 42 (not submitting any additional exhibits with OnePlus's Reply Brief); Dkt. 99-6 (OnePlus's first submission of the June 13, 2017 Response). In short, the June 13, 2007 prosecution statement was not part of the claim construction record due to OnePlus's own failure to submit or discuss them during claim construction briefing. Thus, OnePlus has waived the right to rely on them now.

In any event, the June 13, 2007 statement is merely cumulative to prosecution statements already of record that the Special Master properly considered in rejecting OnePlus's disclaimer arguments. In that regard, the June 13, 2007 Response indicates that the statement on which OnePlus now seek to rely (Dkt. 99 at 19) was merely a rehashing of prior prosecution statements. *See* Dkt. 99-6 at 6 ("Further, ***as the Applicants have explained in detail before (see Applicants' appeal brief dated February 28, 2005)***, the claims are directed at a mobile changing its reporting rate after receiving data transmissions from a base station, not instructions." (emphasis added)). Accordingly, the Court should reject all of OnePlus's untimely arguments about the June 13, 2007 statement because, even to the extent not waived, they fail to establish a clear and unmistakable disclaimer.

## V.     CONCLUSION

For these reasons, the Court should overrule OnePlus's objections to the Special Master's recommended constructions.

Dated:  June 28, 2022            Respectfully submitted,

By: */s/ Jonathan K. Waldrop*_____
     Jonathan K. Waldrop (CA Bar No. 297903)
     (Admitted in this District)
     jwaldrop@kasowitz.com
     Darcy L. Jones (CA Bar No. 309474)
     (Admitted in this District)
     djones@kasowitz.com
     Marcus A. Barber (CA Bar No. 307361)
     (Admitted in this District)
     mbarber@kasowitz.com
     John W. Downing (CA Bar No. 252850)
     (Admitted in this District)
     jdowning@kasowitz.com
     Heather S. Kim (CA Bar No. 277686)
     (Admitted in this District)
     hkim@kasowitz.com
     ThucMinh Nguyen (CA Bar No. 304382)
     (Admitted in this District)
     tnguyen@kasowitz.com
     **KASOWITZ BENSON TORRES LLP**
     333 Twin Dolphin Drive, Suite 200
     Redwood Shores, California 94065
     Telephone: (650) 453-5170
     Facsimile: (650) 453-5171

     Paul G. Williams (GA Bar No. 764925)
     (Admitted in this District)
     pwilliams@kasowitz.com
     **KASOWITZ BENSON TORRES LLP**
     1230 Peachtree Street N.E., Suite 2445
     Atlanta, Georgia 30309
     Telephone: (404) 260-6080
     Facsimile: (404) 260-6081

     Hershy Stern (NY Bar No. 4631024)
     (Admitted *pro hac vice*)
     hstern@kasowitz.com
     Howard L. Bressler (NY Bar No. 2487379)
     (Admitted *pro hac vice*)
     hbressler@kasowitz.com
     Joshua A. Whitehill (NY Bar No. 4766473)
     (Admitted *pro hac vice*)
     jwhitehill@kasowitz.com
     Noah P. Dorman (DC Bar No. 1779821)
     (Admitted *pro hac vice*)
     ndorman@kasowitz.com
     **KASOWITZ BENSON TORRES LLP**
     1633 Broadway

21

New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark D. Siegmund (TX Bar No. 24117055)
mark@swclaw.com
**STECKLER WAYNE CHERRY & LOVE
PLLC**
8416 Old McGregor Road
Waco, TX 76712
Telephone: (254) 651-3690
Facsimile: (972) 387-4041

Gregory Phillip Love (TX Bar No. 24013060)
greg@swclaw.com
**STECKLER WAYNE CHERRY & LOVE
PLLC**
107 East Main Street
Henderson, TX 75652
Telephone: (903) 212-4444
Facsimile: (903) 392-2267

**ATTORNEYS FOR PLAINTIFF
WSOU INVESTMENTS, LLC
d/b/a BRAZOS LICENSING AND
DEVELOPMENT**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on June 28, 2022, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Jonathan K. Waldrop*
**Jonathan K. Waldrop**
