IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| WSOU Investments LLC<br>doing business as<br>Brazos Licensing and Development,<br><br>    Plaintiffs,<br><br>v.<br><br>OnePlus Technology (Shenzhen) Co., Ltd.,<br><br>    Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:20-cv-00952-ADA<br>Civil Action No. 6:20-cv-00953-ADA<br>Civil Action No. 6:20-cv-00956-ADA<br><br>Jury Trial Demanded |

**DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S OBJECTIONS TO
SPECIAL MASTER'S REPORT AND RECOMMENDATION
REGARDING CLAIM CONSTRUCTION
<u>(GROUP I PATENTS)</u>**

# TABLE OF CONTENTS

**Page**

I.  U.S. PATENT NO. 8,149,776 ("THE '776 PATENT") .................................................... 1

   A.  Term #2: "transmitter configured to attempt access to a wireless network"/ "[transmitter] attempting access to a wireless network (Claims 1 and 10) ............ 1

   B.  Term #3: "processor" ('776 Patent, Claims 10, 11, 12, 14, 15, 16, 18, 19) ........... 2

   C.  Term #4: "program of instructions" ('776 Patent, Claim 19) ................................ 3

II. U.S. PATENT NO. 8,767,614 ("THE '614 PATENT") .................................................... 4

   A.  Claims 13 and 14 Invoke § 112, ¶ 6 ........................................................................ 5

   B.  Claims 6, 13, 14: Objections to Whether Sufficient Structure—an Algorithm—Is Disclosed in the Specification ....................................................... 6

   C.  Claim 14: Additional Objections Regarding Indefiniteness .................................. 7

III. U.S. PATENT NO. 7,477,876 ("THE '876 PATENT") ................................................... 7

   A.  The Jury Should Be Informed that "Data Transmission" Excludes "Control Signals" and "Instructions" ....................................................................... 8

   B.  OnePlus Did Not Waive Reliance on Any Arguments or Evidence ...................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002)......................................................................................10

*Global Equity (SA) Pty. Mgmt. Ltd. v. Expedia, Inc.*,
  No. 2:16-cv-95, 2016 WL 7416132 (E.D. Tex. Dec. 22, 2016) ................................................6

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014)........................................................................................9

*Mobility Workx, LLC v. T-Mobile US, Inc.*,
  No. 4:17-cv-567, 2018 WL 3636548 (E.D. Tex. July 31, 2018)................................................2

*Sulzer Textil A.G. v. Picanol N.V.*,
  358 F.3d 1356 (Fed. Cir. 2004)........................................................................................9

*Summit 6, LLC v. Samsung Elecs. Co.*,
  802 F.3d 1283 (Fed. Cir. 2015)........................................................................................2

*TQP Development, LLC v. Intuit Inc.*,
  No. 2:12-CV-180, 2014 WL 2810016 (E.D. Tex. Jun. 20, 2014) ............................................2

Defendant OnePlus respectfully submits its Reply to WSOU's Response to OnePlus's Objections to the Special Master's May 24, 2022 Report.

I.  **U.S. PATENT NO. 8,149,776 ("THE '776 PATENT")**

   A.  **Term #2: "transmitter configured to attempt access to a wireless network"/ "[transmitter] attempting access to a wireless network (Claims 1 and 10)**

| OnePlus's Proposed Construction | Recommended Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶6. **Function**: attempting access to a wireless network by sending on a random access channel at a first transmit power a first preamble comprising a signature sequence and by randomly selecting the signature sequence from a set of signature. **Structure**: none disclosed. The claim is indefinite. | Not subject to § 112, ¶ 6. Plain-and-ordinary meaning. |

WSOU does not dispute that the recited "transmitter" is incapable of—and thus insufficient structure for—randomly selecting a signature sequence from a set of signature sequences. *See* Resp. at 3-6. WSOU brushes aside this dispositive fact by asserting "the claims do not use the words 'is randomly selected' as an action the transmitter must take, but instead use these words to convey the nature of the recited signature sequence at the time of transmission by the transmitter." Resp. at 3. In essence, WSOU argues that the claimed "transmitter" is just any structure for "sending" data. But the claims require a transmitter "to attempt access to a wireless network by sending … a signature sequence that is randomly selected." To "attempt access" as claimed, the transmitter must be configured to randomly select a signature sequence.

Further, WSOU's view that the phrase "is randomly selected" functions as a mere adjective, describing "the nature of the recited signature sequence," is inconsistent with the use of the present tense verb "**is**" to describe selection of "**a** signature sequence." The claims **were not drafted in the past tense** to recite the sending of a signature sequence that "**was** randomly selected" at some point in the past or in an earlier step in the claim. Rather, "a signature

sequence **is** randomly selected" by the "transmitter configured to attempt access to a wireless network." *See, e.g.*, *TQP Development, LLC v. Intuit Inc.*, No. 2:12-CV-180, 2014 WL 2810016, at *2 (E.D. Tex. Jun. 20, 2014) (Bryson, J., sitting by designation) ("the phrase 'are transmitted' … can be fairly read as a dynamic verb phrase that describes the act of transmission, not a stative phrase that is used adjectivally to describe the data blocks as having been transmitted").

WSOU's cited cases are readily distinguishable. In *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015), the Federal Circuit found that the phrase "being provided to" was "not a step in the claimed method" because that "portion of the claim limitation is a reference back to the previously claimed 'pre-processing parameters.'" In contrast here, the "is randomly selected" phrase is an active step describing how the transmitter attempts access by creating "**a** signature sequence" in the first instance. In *Mobility Workx, LLC v. T-Mobile US, Inc.*, No. 4:17-cv-567, 2018 WL 3636548 (E.D. Tex. July 31, 2018), the phrase at issue— "identified for"—was drafted in the past tense and not found to describe an active step of identification. *Id.* at *15-16. In contrast here, the phrase "is randomly selected" is in the present tense and describes an active step by the transmitter to attempt network access.

   **B.**     **Term #3: "processor" ('776 Patent, Claims 10, 11, 12, 14, 15, 16, 18, 19)**

| OnePlus's Proposed Construction | Recommended Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶6.<br>**Function**: determining that access attempts are unsuccessful<br>**Structure**: none disclosed.<br>The claim is indefinite. | Not subject to § 112, ¶ 6.<br><br>Plain-and-ordinary meaning. |

WSOU argues that this Court should ignore its previous *WSOU v. Google* claim construction order, asserting it is "of limited—if any—persuasive value." Resp. at 6-7. But the *Google* order is instructive and properly found the term "processor" used in multiple other WSOU-asserted patents to invoke § 112, ¶ 6. As shown in the *Google* order, in certain patents,

the term "processor" is not sufficient structure on its own for performing the recited functions and, thus, operates as a nonce word, requiring treatment under § 112, ¶ 6.

In the '776 patent the term "processor" invokes § 112, ¶ 6 because it is insufficient structure on its own for performing the recited functions, and the claims fail to describe any operations for the processor to perform to achieve them. OnePlus raised the critical issue that the claims fail to describe how the "processor" achieves the claimed functions of "determine[ing] that the access attempt from the first preamble was unsuccessful" and of causing the "transmitter" to perform the additional recited functions (*i.e.*, "to reattempt access to the wireless network" and "to send at a second transmit power a second preamble"), *see* Obj. at 4-5, and WSOU provided no response, *see* Resp. at 5-7. Therefore, there is no dispute that the claims are devoid of operational details describing how the "processor" is to achieve these functions.[1]

C.   Term #4: "program of instructions" ('776 Patent, Claim 19)

| OnePlus's Proposed Construction | Recommended Construction |
|---|---|
| This claim should be construed under 35 U.S.C. 112, ¶6. **Function**: attempting access to a wireless network by sending a signature sequence on a random access channel **Structure**: none disclosed. The claim is indefinite. | Not subject to § 112, ¶ 6. Plain-and-ordinary meaning. |

WSOU's response confirms this case is distinguishable from the Federal Circuit's decisions in *Dyfan* and *Zeroclick*, which found the terms "program," "code," and "application" were not generic placeholder terms because they referred to code "existing in the prior art" or that could be obtained "off-the-shelf." Indeed, unlike in *Dyfan* and *Zeroclick,* WSOU does not dispute that the '776 patent's "program of instructions" does not refer to code available in the "prior art" or "off-the-shelf." WSOU accuses OnePlus of failing to present evidence of this fact,

---

[1] WSOU cites no authority that allows the Special Master to rely on his own knowledge and experience **as evidence** of how a POSITA would understand a claim term.  *See* Resp. at 7.

but the '776 patent's teachings—which OnePlus cited—are evidence and determinative of this issue. *See* Def.'s Obj. (Dkt. 99) at 8. As OnePlus explained, the '776 patent provides no indication that "program of instructions" refers to any "prior art" or "off-the-shelf" code.

WSOU is also wrong that the testimony of its expert, Dr. Cooklev, is analogous to the expert testimony cited by the Federal Circuit in *Dyfan*. In *Dyfan,* the defendant's expert, Dr. Goldberg, testified that claimed functions could be implemented using "off-the-shelf software." 28 F.4th at 1367-68. Here, Dr. Cooklev makes no such claim and, thus, fails to establish what "off-the-shelf" structure the claimed "program of instructions" connotes to a POSITA.

Finally, WSOU has no meaningful response to OnePlus's showing that there are no specific "objectives and operations" recited in claim 19 that impart sufficient structure for the "program of instructions." *See* Obj. at 7. WSOU refers only to the same purported operations cited by the Special Master, which are insufficient. Resp. at 10. As OnePlus explained, what the Special Master identified only amounts to high-level "actions" for the program to perform, and the '776 patent does not disclose how to perform them. *See* Obj. at 7. WSOU fails to cite anything in the claims or specification that could even arguably supply the missing disclosure.

II. <u>U.S. PATENT NO. 8,767,614 ("THE '614 PATENT")</u>

OnePlus's proposals and the Special Master's recommendations are as follows:

| Term | OnePlus's Proposal | Recommended Construction |
|---|---|---|
| **Term #5**: "means for causing sending of a buffer information report to a system station" (Claim 6) / "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the | This claim should be construed under 35 U.S.C. 112, ¶6.<br><br>**Function**: causing sending of a buffer information report to a system station.<br>**Structure**: none disclosed.<br><br>The claim is indefinite. | **Claim 6**: Subject to § 112, ¶6<br>**Function**: causing sending of a buffer information report to a system station.<br>**Structure**: Pursuant to In re Katz, the data processing unit 32, memory 31, and input/output interface 34 in Fig. 3, and equivalents.<br><br>**Claim 13**: Not subject to § |

| | | |
|---|---|---|
| apparatus … sending of a buffer information report to a system station" (Claim 13) | | 112, ¶ 6. Plain-and-ordinary meaning |
| **Term #6**: "means for causing sending of an indication to the system station" (Claim 6) / "at least one processor; and at least one memory including computer program code the at least one memory and the computer program code configured to, with the at least one processor, cause the apparatus . . . sending of an indication to the system station" (Claim 13) | This claim should be construed under 35 U.S.C. 112, ¶6.  **Function**: causing sending of an indication to the system station. **Structure**: none disclosed.  The claim is indefinite. | **Claim 6**: Subject to § 112, ¶6 **Function**: causing sending of an indication to a system station. **Structure**: Pursuant to In re Katz, the data processing unit 32, memory 31, and input/output interface 34 in Fig. 3, and equivalents.  **Claim 13**: Not subject to § 112, ¶ 6. Plain-and-ordinary Meaning |
| **Term #7**: "the at least one memory and the computer program code are further configured to, with the at least one processor, cause the apparatus to perform at least the following: process an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension" (Claim 14) | This claim should be construed under 35 U.S.C. 112, ¶6. **Function**: indefinite. **Structure**: indefinite. Alternatively: **Function**: processing an indication that the buffer size of the node for relaying is extended from that of the user equipment and information of the size of the extension. **Structure**: none disclosed. In either instance, the claim is indefinite. | Not subject to § 112, ¶ 6.  Not indefinite. Plain-and-ordinary meaning. |

A. **Claims 13 and 14 Invoke § 112, ¶ 6**

WSOU's response summarily concludes that because its expert asserted that "processor," "memory," and "computer program code" are "well-understood terms" that claims 13 and 14 avoid means-plus-function treatment. Resp. at 12-13. Not so. As explained in OnePlus's briefing, claim 13's formulaic recitation of "computer program code," "processor," and "memory" does not connote sufficient structure to avoid means-plus-function treatment. *See* Obj. at 11-12 (citing *Cypress Lake Software, Inc. v. ZTE (USA) Inc.*, 2018 WL 4035968 (E.D. Tex. Aug. 23, 2018); *Global Equity (SA) Pty. Mgmt. Ltd. v. Expedia, Inc.*, No. 2:16-cv-95, 2016

-5-

WL 7416132 (E.D. Tex. Dec. 22, 2016)). Aside from WSOU noting that *Cyprus Lake* and *Global Equity* issued before the Federal Circuit's decision in *Dyfan* (Resp. at 13), WSOU does nothing to distinguish *Cyprus Lake*—which found the term "code for" did "not connote sufficiently definite structure"—or *Global Equity*—which found that "program code for" invokes § 112, ¶ 6 because it is "defined only by the function that it performs." The Federal Circuit's *Dyfan* decision does not address or overrule *Cyprus Lake* or *Global Equity*. The '614 patent claims recite non-structural language similar to that used in *Cyprus Lake* and *Global Equity* and for the same reasons, this Court should find that claims 13 and 14 invoke § 112, ¶ 6.

WSOU also ignores this Court's previous finding in its *Google* order, asserting that no guidance should be taken from this Court's "order-without opinion." WSOU Opp. at 13. However, the *Google* order is relevant here as it found that strikingly similar claim language (reciting "processor," "memory," and "computer program code") invoked § 112, ¶ 6.

    **B.**    **Claims 6, 13, 14: Objections to Whether Sufficient Structure—an Algorithm—Is Disclosed in the Specification**

WSOU attempts to liken the claimed "sending" with separate functions such as "receiving," "storing," and "processing." But this is wrong. *See* Obj. at 12-14. Receiving, storing, and processing are all internal operations suggesting that there would be no data leaving a general purpose computer. Sending, on the other hand, requires that data be maintained and configured to be sent from one device and to another. As explained in OnePlus's opening brief, the '614 patent's claims require that specific information, which must be generated in a specific way as recited in the claims, be sent from a relay node such that it is directed to a specific and particular location (a "system station"). Identifying specific information, locating the destination, and ensuring that the appropriate information is sent to the appropriate destination, as required by the claims, is more than generic processing. The specification does not disclose

how the information purportedly included in the "indication" is identified or how that information is sent. Because special programming is required and because sufficient structure (*i.e.*, an algorithm) is not disclosed, claims 6, 13, and 14 are indefinite.

### C. Claim 14: Additional Objections Regarding Indefiniteness

Claim 14 is also indefinite because its recitation of "processing an indication" lacks reasonable certainty in the context of the claim. *See* Obj. at 14-15. WSOU asserts that "process" is well understood and that a POSITA would understand that it means "taking [] information … into account" and "performing operations on [] data" and is therefore "sufficiently definite." Resp. at 15-16. But merely reciting "processing," "performing operations on," or "taking information into account" fails to provide any reasonable certainty to a POSITA as to *what type* of operations or processing is being performed or *how* the indication is being taken into account. WSOU does not dispute the Special Master's assertion during the Markman hearing that "processing an indication could mean anything." Ex. 2 (Hr'g Tr.) at 67:24-68:5. Because the claimed "processing an indication" does not provide any "objective direction for persons of skill in the art" as to how the indication is processed, claim 14 is indefinite.

## III. U.S. PATENT NO. 7,477,876 ("THE '876 PATENT")

| Term | Proposed Construction | Recommended Construction |
|---|---|---|
| "varying a rate for reporting channel quality information from a mobile station to a base station as a function of the presence or absence of a reception of a data transmission at the mobile station" | "data transmission" should be construed according to its plain and ordinary meaning, except that it does not include an instruction, such as a control signal.[2] | Plain-and-ordinary meaning **Notes not for the jury:** 1) The plain-and-ordinary meaning of "function of" includes what follows, but is not limited only to what follows. 2) The plain-and-ordinary meaning of "data transmission" excludes control signals/instructions. |

OnePlus asks the Court to construe the term "data transmission." OnePlus focuses on

---

[2] As noted at the claim construction hearing (Hr'g Tr. 23:25-24:16), "data transmission" should be read consistently in all claims, including 1, 2, 7 and 9.

just these two words because the Special Master expressly suggested that this narrow term was the center of the parties' dispute and invited the parties to submit amended proposed claim constructions and supplemental argument. Hr'g Tr. at 16:15-16, 120-121. OnePlus has submitted that same amended construction to Your Honor. WSOU, on the other hand, is fighting yesterday's battle, relying on arguments directed at other language that is no longer the focus of the dispute, and ignoring arguments made throughout the proceedings before the Special Master. Ultimately, WSOU's opposition is nonresponsive and OnePlus's objection should be sustained.

### A. The Jury Should Be Informed that "Data Transmission" Excludes "Control Signals" and "Instructions"

The Applicants unambiguously and repeatedly distinguished the "control signals" and "instructions" that a network operator sends to a mobile device from the claimed "data transmissions." The jury should be informed of this critical prosecution history: (1) on February 2, 2004, the Applicants distinguished the prior art Chen reference noting "[u]sing the actual data transmission from the base station as a trigger … is quite different from using a separate signaling message" Lyons Decl. (Dkt. 99[3]) Ex. 3 at 6-7; (2) on August 6, 2004, the Applicants again distinguished Chen, writing that "being <u>instructed</u>" was "quite different" than the claimed invention, and further, that "[i]n Chen, the rate … is varied as a function of the mobile receiving an <u>instruction</u> from the base station … Accordingly, Chen does not teach varying feedback from the mobile based on the absence or presence of a <u>data transmission from the base station to the mobile</u>." *Id.* Ex. 4 at 5-6 (emphasis in original); and (3) on June 13, 2007, the Applicants further explained "the claims are directed at a mobile changing its reporting rate after receiving data transmissions from a base station, **not instructions**." *Id.* Ex. 5 at 6.

WSOU does not address the substance of any of these statements, much less explain why

---

[3] Docket Citations herein at to the docket in case no. 6:20-cv-00952.

they fail to constitute a disclaimer. *See Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1372 (Fed. Cir. 2014). At a minimum, these statements clarify what the Applicants meant by "data transmission" and, accordingly, the Court has a "duty" to provide an instruction to the jury making this clear. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004).

WSOU misleadingly suggests that the Special Master rejected OnePlus's proposed alternative construction by including Note 1. *See* Resp. at 18-19 ("[T]he Special Master included Note #1 … because 'the claim language explicitly contradicts' OnePlus' [proposed construction]."). But the portions of the Report quoted by WSOU relate to OnePlus's initial proposed construction, not its alternative one. *See* Resp. at 18-19; *cf.* Dkt. 93 (Rep. & Rec.) at 11-18 (analyzing initial proposed constructions) with 19-21 (analyzing revised proposed constructions). There is, in fact, nothing in the Special Master's Note 1 that rejects or overrides the negative limitation language proposed by OnePlus as an alternative to clarify that a "data transmission" does not include an instruction such as a control signal. Note 1 in no way precludes further clarification as to what is not included.[4] It was thus entirely appropriate for the Special Master to further explain in Note 2—consistent with OnePlus's proposal—that "data transmission" does not include anything and everything, but "excludes control signals/instructions."

### B. OnePlus Did Not Waive Reliance on Any Arguments or Evidence

Rather than address the substance of OnePlus's argument that the Applicants clearly and repeatedly disclaimed reliance on network "signals" and "instructions," WSOU instead argues that this argument was waived. Resp. at 19-20. WSOU is wrong. WSOU does not and cannot

---

[4] Although Note 1 does not reject OnePlus's alternative proposed construction, since it does not address the term "data transmission" at the center of the parties' dispute, OnePlus submits that it would be unnecessary and confusing to the jury to include Note 1 in the construction.

dispute that both the February and August 2004 Applicant Remarks distinguishing signals/instructions from a "data transmission" are part of the record in this case. Dkts. 32-1, 32-4 and 32-5 (Lyons Decl. Exs. C, D). These citations alone support a finding of disclaimer. Indeed, WSOU concedes that the June 13, 2007 Response's statement that data transmissions are "not instructions" was a "rehashing of prior prosecution statements." Resp. at 20.

The 2007 "not instructions" statement is also part of the record. All written submissions to the Special Master were expressly designated as part of the record. Dkt. 53. The relevant excerpts from the June 13, 2007 Applicant Remarks were included in *Markman* slides sent to the Special Master. Lyons Reply Decl. Ex. 1. The statements were also provided in the November 3, 2021 Supplemental Argument submitted to the Special Master via email. Lyons Decl. Ex. 1. The Special Master expressly acknowledged this argument as part of the record. Dkt. 93, n. 14 ("In addition to e-mailing the undersigned updated proposed constructions, the parties also emailed short position statements in support of their updated proposed constructions.")

Even if the 2007 statement was not in the record, a finding of waiver would not be appropriate here. Rule 53, governing special masters, expressly allows the district judge reviewing the Special Master's report to "receive evidence." Fed. R. Civ. Proc. 53(f)(1). Further, the Federal Circuit has declined to find any waiver where "a party simply presented new or additional arguments in support of the scope of its claim construction." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1371 (Fed. Cir. 2002). Moreover, WSOU had ample opportunity to address this prosecution history during the *Markman* hearing, through supplemental briefing to the Special Master, via its own objections to the Special Master's claim construction, and through the present briefing eliminating any even theoretical prejudice that could purportedly support a waiver.

Dated: July 12, 2022

/s/ *Michael J. Lyons*
Michael J. Lyons*
California Bar No. 202284
michael.lyons@morganlewis.com
Ahren C. Hsu-Hoffman
Texas Bar No. 24053269
Ahren.hsu-hoffman@morganlewis.com
Jacob J.O. Minne*
California Bar No. 294570
jacob.minne@morganlewis.com
Austin L. Zuck*
California Bar No. 318434
austin.zuck@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
T: 650.843.4000
F: 650.843.4001

Elizabeth M. Chiaviello
Texas Bar. No. 24088913
elizabeth.chiaviello@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201
T: 214.466.4000
F: 214.466.4001

*Admitted *pro hac vice*

***Attorneys for Defendant OnePlus Technology (Shenzhen) Co. Ltd.***

-12-

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on July 12, 2022, a true and correct copy of the foregoing document was served electronically on counsel of record via the Court's CM/ECF system per Local Rule CV-5.

*/s/ Michael J. Lyons*
Michael J. Lyons
